**IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PANAMA CITY DIVISION**


**JOHN ANDREW AUSTIN,**
        **Plaintiff,**

**v.**                                                    **Case No: 5:08cv243/RS/MD**

**MICHAEL J. ASTRUE,**
**Commissioner of Social Security,**
        **Defendant.**

_____

**AMENDED REPORT AND RECOMMENDATION**

This case has been referred to the undersigned magistrate judge pursuant to the authority of 28 U.S.C. § 636(b) and Rules 72.1(A), 72.2(D) and 72.3 of the local rules of this court relating to review of administrative determinations under the Social Security Act and related statutes.  It is now before the court pursuant to 42 U.S.C. § 405(g) of the Social Security Act for review of a final determination of the Commissioner of Social Security (Commissioner) denying claimant Austin's application for disability insurance benefits and Supplemental Security Income benefits under Titles II and XVI of the Act.

Upon review of the record before this court, it is the opinion of the undersigned that the findings of fact and determinations of the Commissioner are supported by substantial evidence; thus, the decision of the Commissioner should be affirmed.

## PROCEDURAL HISTORY

Plaintiff, John Austin, filed applications for benefits claiming an onset of disability as of August 2, 2002. The applications were denied initially and on reconsideration, and plaintiff requested a hearing before an administrative law judge (ALJ). Hearings were held on October 3, 2005 and again on January 3, 2006. A medical expert and a vocational expert testified at the second hearing. The ALJ entered an unfavorable decision (tr. 19-27) and Mr. Austin requested review by the Appeals Council and submitted additional evidence. The Appeals Council considered the new evidence but declined review (tr. 8-11). The Commissioner has therefore made a final decision, and the matter is subject to review in this court. *Ingram v. Comm'r of Soc. Sec. Admin,* 496 F.3d 1253, 1262 (11th Cir. 2007); *Falge v. Apfel,* 150 F.3d 1320 (11th Cir. 1998). This timely appeal followed.

After review of the case, the undersigned entered a Report and Recommendation on November 20, 2009 (doc. 40). The district judge referred the matter back, noting that the undersigned had erroneously identified Dr. Stringer, a neurosurgeon, as a family practitioner. As shown in the explanation at page 13, fn 2, the error was the name, not the specialty.

## FINDINGS OF THE ALJ

Relative to the issues raised in this appeal the ALJ found that Mr. Austin had not engaged in substantial gainful activity since his claimed onset date; that he had severe conditions of degenerative disc disease of the lumbar and cervical spine and a history of tobacco abuse, but that he did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in Appendix 1, Subpart P, Regulation No. 4; that his allegations regarding his limitations were not totally credible; that he had the residual functional capacity for a wide range of light work; that he was unable to perform his past relevant work as an electrician's helper; that he was a younger individual with a high school

education; that he had some exertional limitations that did not allow him to perform the full range of light work, but that there were jobs in significant numbers in the national economy that he could perform as identified by the vocational expert; and that he was not under a disability as defined in the Act.

## STANDARD OF REVIEW

In Social Security appeals, this court must review de novo the legal principles upon which the Commissioner's decision is based. *Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005) (citing *Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986)). There is no presumption that the Commissioner followed the appropriate legal standards in deciding a claim for benefits, or that the legal conclusions reached were valid. *Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1996); *Lewis v. Barnhart*, 285 F.3d 1329, 1330 (11th Cir. 2002). Failure to either apply the correct law or to provide the reviewing court with sufficient reasoning for determining that the proper legal analysis has been conducted mandates reversal. *Ingram v. Comm'r of Soc. Sec.*, 496 F.3d 1253, 1260 (11th Cir. 2007).

The court must also determine whether the ALJ's decision is supported by substantial evidence. *Moore*, 405 F.3d at 1211 (citing *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158-59 (11th Cir. 2004)). Even if the proof preponderates against the Commissioner's decision, if supported by substantial evidence, it must be affirmed. *Ingram*, 496 F.3d at 1260; *Miles*, 84 F.3d at 1400. Substantial evidence is more than a scintilla but less than a preponderance, and encompasses such relevant evidence as a reasonable person would accept as adequate to support a conclusion. *Moore*, 405 F.3d at 1211 (citation omitted). In determining whether substantial evidence exists, the court must view the record as a whole, taking into account evidence favorable as well as unfavorable to the Secretary's decision. *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995). This limited review precludes deciding the facts anew, making credibility determinations, or re-weighing the

evidence. *Moore*, 405 F.3d at 1211 (citing *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11ᵗʰ Cir.1983); *Miles v. Chater*, 84 F.3d 1397, 1400 (11ᵗʰ Cir. 1996). Findings of fact of the Commissioner that are supported by substantial evidence are conclusive. 42 U.S.C. § 405(g); *Ingram*, 496 F.3d at 1260.

A disability is defined as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). To qualify as a disability the physical or mental impairment must be so severe that the claimant is not only unable to do his previous work, "but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d)(2)(A).

The social security regulations establish a five-step evaluation process to analyze claims for both SSI and disability insurance benefits. *See Moore,* 405 F.3d at 1211; 20 C.F.R. § 416.912 (2005) (five-step determination for SSI); 20 C.F.R. § 404.1520 (2005) (five-step determination for DIB). A finding of disability or no disability at any step renders further evaluation unnecessary. The steps are:

1. Is the individual currently engaged in substantial gainful activity?

2. Does the individual have any severe impairment?

3. Does the individual have any severe impairments that meet or equal those listed in Appendix 1 of 20 C.F.R. Part 404?

4. Does the individual have any impairments which prevent past relevant work?

5. Do the individual's impairments prevent any other work?

These regulations place a very heavy burden on the claimant to demonstrate both a qualifying impairment or disability and an inability to perform past relevant work. *Moore*, 405 F.3d at 1211 (citing *Spencer v. Heckler*, 765 F.2d 1090, 1093 (11ᵗʰ

Cir.1985)).  If the claimant establishes such an impairment, the burden shifts to the Commissioner at step 5 to show the existence of other jobs in the national economy which, given the claimant's impairments, the claimant can perform.  *Doughty v. Apfel*, 245 F.3d 1274, 1278 (11ᵗʰ Cir. 2001); *Allen v. Bowen,* 816 F.2d 600, 601 (11ᵗʰ Cir. 1987).  If the Commissioner carries this burden, claimant must prove that he cannot perform the work suggested by the Commissioner.  *Doughty,* 245 F.3d at 1278 n.2; *Hale v. Bowen*, 831 F.2d 1007, 1011 (11ᵗʰ Cir. 1987).

## PLAINTIFF'S MEDICAL HISTORY

The earliest entry in the Mr. Austin's medical record is dated February 18, 2002 when he went to an orthopedic surgeon, Henry Barnard, M.D., complaining of neck pain radiating into his right arm during the previous week, followed by an episode of lost strength in both hands.  Mr. Austin also complained of low back pain ongoing for several years beginning in 1986 after an injury on the job in Colorado, and bilateral leg pain which he described as a "burning sensation."  He had not had much in the way of treatment.  His physical examination was normal except for some mild tenderness in the low back.  He was neurologically intact.  X-rays showed some mild disc space narrowing at L4-5 and L5-S1.  Dr. Barnard counseled Mr. Austin on the benefits of aerobic conditioning and indicated that he would change his anti-inflammatory medication to see how he responded.  He was told to return in two months (tr. 170-171).  Dr. Barnard's notes also indicate that approximately two months after his first visit, on April 12, 2002, Mr. Austin appeared at the front desk requesting pain medication.  He was offered Celebrex samples and an appointment but he "refused & left angry."  (Tr. 171).

Seven months after first seeing Dr. Barnard, Mr. Austin was examined by Douglas Stringer, M.D., a neurosurgeon.  He complained of low back pain, leg pain, muscle spasms in his lumbar area, numbness in his legs, and neck pain.  He worked as an electrician and did heavy work.  He was not taking any medication and had not

*Case No: 5:08cv243/RS/MD*

had any recent x-rays. On physical examination there was mild tenderness in the mid and lower lumbar area with muscle spasm, limited forward bending, and pain on straight leg raising. Motor examination and reflexes were normal in all areas. On sensory examination there was spotty loss of sensation to pin prick over both legs and feet. Dr. Stringer's impression was back and bilateral leg pain with some evidence suggestive of nerve root irritation or compression. Dr. Stringer ordered spinal x-rays, an MRI of the lumbar spine and physical therapy. Mr. Austin was given prescriptions for Lortab, Flexeril and Vioxx and was told to return in two weeks (tr. 179-180). He called 11 days later requesting a refill on his Lortab which was refused because he should have had enough to last until September 20 (tr. 179). He called back on October 7, 2002 and was given a refill for Lortab with no further refills (*id*.)

Mr. Austin returned to Dr. Stringer on October 17, 2002. Physical examination showed severe tenderness in the low back, moderately severe muscle spasm, and limitation in forward and lateral bending. Motor and sensory examinations were normal. An MRI done on October 7, 2002 revealed a bulging disc and osteophyte complex at L3-4 with no definite nerve root compression, and a disc osteophyte complex at L4-5 and L5-S1 with no evidence of nerve root compression. There was mild narrowing of the neural foramina at both levels. X-rays showed advanced degenerative changes of the lower lumbar spine. Dr. Stringer felt there was no evidence of any nerve root compression and recommended against any surgery. Mr. Austin was to continue physical therapy and continue working (tr. 177-178). Mr. Austin was given trigger point injections on November 5 and returned to Dr. Stringer on December 13, indicating that he was some better. On examination there was positive straight leg raising but he was otherwise normal. Dr. Stringer indicated that Mr. Austin should do light duty only (tr. 175-176).

Dr. Stringer performed nerve blocks in Mr. Austin's low back on January 22, January 29, February 5 and February 6, 2003. The procedures were tolerated although there was no indication of significant improvement. The last entry in Dr.

Stringer's record is dated March 6, 2003, when it was noted that Mr. Austin called requesting medication but was told that he was to get his medication from his Medipass doctor. Mr. Austin kept insisting that he be given medication so Dr. Stringer wrote him a letter explaining how the Medicaid system worked (tr. 242).

On May 2, 2003, Mr. Austin came under the care of Jason Hatcher, D.O., a family practitioner. He told Dr. Hatcher that according to Dr. Stringer, based on the MRI results, his lower three lumbar discs were "essentially gone." (Tr. 187). Injections had given only marginal results. He was not sure he wanted to continue with Dr. Stringer and Dr. Hatcher suggested he be referred to Dr. Voss in Dothan, Alabama. Mr. Austin indicated that he was willing to try almost anything and was at his rope's end. Physical examination revealed spasms and tenderness in the lumbar spine (tr. 187-188). Dr. Voss recommended a discogram but Florida Medicaid would not cover the procedure in Alabama. On July 17, 2003 Dr. Hatcher noted that Mr. Austin's back was still tender and indicated that he would try and see if he could get an appointment with Dr. Koulisis in Crestview, Florida. Mr. Austin returned to Dr. Hatcher on August 13, 2003. Dr. Koulisis had "bounced him back" without seeing him although apparently an MRI had been done. Dr. Hatcher indicated he would try to get an appointment with Dr. Elzawahry in Panama City, Florida. Mr. Austin seemed depressed, was requiring fairly frequent pain medications and the pain did not relent to the point he could function. Dr. Hatcher started him on time released Morphine and told him to return in two weeks (tr. 190-191).

Dr. Hatcher continued to treat Mr. Austin from August 2003 through the end of December 2005. The medical records show a total of 28 visits. There were repeated references to Mr. Austin's pain becoming worse; he could not get a doctor to do anything for him; Medicaid would not pay for a discogram; he continued on a significant amount of narcotic-type drugs (tr. 226-241). Dr. Hatcher filled out several forms. The first was dated April 8, 2004 in which Dr. Hatcher indicated that Mr.

Austin was not able to work for at least 30 days and that he needed surgery or he would become permanently disabled (tr. 223). On September 28, 2004, Dr. Hatcher filled out a form in which he indicated that Mr. Austin had intervertebral disc disorder with myelopathy in the lumbar region, his prognosis was poor, he had muscle spasms, paraspinal tenderness, decreased range of motion in the spine and leg pain and weakness, his level of pain and fatigue were high and he could lift no more than 10 pounds and carry no more than five pounds, he could not do anything that required continuous sitting or standing, he was not a malingerer, and would be absent from work due to his condition more than three times per month (tr. 254-264). On August 24, 2005 Dr. Hatcher filled out another form which was essentially identical to the September, 2004 form (tr. 287-294).

Mr. Austin's other treating physician was Charles Wingo, M.D., a neurosurgeon, who first saw him on April 7, 2004. Mr. Austin told Dr. Wingo that he had worked hard all his life until about three years prior when he developed severe low back pain. He tried to keep working for about a year but had not worked since. His pain was greater in his back than in his extremities and he denied numbness or weakness. Examination of the neck revealed full range of motion with normal musculature. The lumbar spine was not tender, there was no marked limitation of motion in the back but there was pain on extension and flexion with hamstring tightness on straight leg raising. Mr. Austin's legs appeared normal and without atrophy, there was no motor deficit and reflexes were normal. Dr. Wingo reviewed the October 2002 MRI and noted disc degeneration at three levels but no evidence of nerve root impingement. Dr. Hatcher's impression was multi-level disc degeneration which required a new MRI (tr. 217-18). An MRI done three days later disclosed bulging disc material, degenerative changes and disc space narrowing causing mild to moderate foraminal stenosis bilaterally at L4-5 and L5-S1. Disc material at L4-5 was asymmetric on the right side suggesting a shallow broad based right protrusion which may irritate the right L5 nerve as it exits the thecal sac. There

was no interval change when compared to the October 2002 study. The remainder of the examination was unremarkable (tr. 221-222).

Mr. Austin returned to Dr. Wingo on May 15, 2004. Dr. Wingo noted that the MRI had shown marked degeneration in the low back with very little interval change. He advised Mr. Austin that he was a candidate for disc replacement when it became available but that he would not recommend a three level fusion. Dr. Wingo suggested that Mr. Austin return in one year (tr. 216).

Mr. Austin returned to Dr. Wingo approximately a year later, on March 21, 2005. On physical examination he had gained a significant amount of weight due to his inactivity. His lumbar spine was not tender on extension and there was moderate limitation to flexion. There was hamstring tightness with straight leg raising at 70°. His legs were normal but raising one ankle above his knee produced back pain. There was mild weakness on the left but not on the right and reflexes were normal. Dr. Wingo felt that there now appeared to be L5 radiculopathy and the MRI should be repeated (tr. 279-280). An MRI done on March 28, 2005 showed bulging disc material, degenerative changes and disc space narrowing to variable degrees at the lower three lumbar levels. There was moderate foraminal stenosis on both sides at L4-5 and L5-S1. There was recess stenosis at L4-5. There was a shallow broad based right posterolateral disc protrusion at L4-5 which may irritate the right L5 nerve root as it exits the thecal sac. There is no significant internal change compared to the April 2004 study (tr. 316-17).

There is no record that Mr. Austin saw Dr. Wingo soon after the March 28, 2005 MRI. He returned to Dr. Wingo almost a year later, on January 28, 2006 complaining of severe neck pain (tr. 364-366). On March 20, 2006 (after the ALJ's February 15, 2006 unfavorable decision) Mr. Austin again complained of severe pain in his neck and left arm. An MRI of the neck done in December 2005 was read as showing moderate to advanced degenerative changes at C5-6 and C6-7 with bilateral foraminal stenosis at both levels. Dr. Wingo recommended an anterior cervical

discectomy and fusion at two levels to decompress the C6 and C7 nerve roots (tr. 361-362). Surgery was performed on April 13, 2006 according to the operative record (tr. 358-359) but there are no follow up records from Dr. Wingo's office.

Bruce D. Witkind, M.D., who reviewed the entire medical record, testified by telephone during the second administrative hearing. Dr. Witkind opined that Mr. Austin had no limitations on sitting, standing or walking, and could lift up to 30 pounds, with occasional bending and no excessive climbing. He stated that the MRI from March 2005 was "not clinically significant" because it was not consistent with the pain described, and "is not compatible with the clinical findings of any of the examining physicians." (Tr. 412-13). He also further opined that the degenerative changes at the lower three discs of the spine were "compatible with age," and that the cervical spine abnormalities are "compatible with age and wear and tear, but there's nothing severe in that[.]" (Tr. 418, 420). However, when asked if Austin's medications were reasonable to prescribe to an individual who was not in pain, Dr. Witkind clarified, "I didn't say there wasn't any type of pain. I said the pain appears to be subjective without having an objective finding." (R. 420).

Dr. Witkind testified that the impairment questionnaire completed by Dr. Hatcher "actually does not relate in any way to the claimant's condition, and Dr. Hatcher is not qualified to fill out such a form in any [sense]." (Tr. 414). He noted that Dr. Wingo's opinion contained "no neurological conclusions" and "in fact it should be made clear on the record that the surgery recommended by Dr. Wingo is not FDA approved. There's no approval of a three-level disc replacement, so it is not clear to me why there's been a restriction from work as of the date of [April 12, 2005] . . . . in fact disc replacement, we have no long-term results of the effectiveness of disc replacement, and three-level disc replacement is virtually, well, contraindicated according to the [FDA]." (Tr. 414-15). Dr. Witkind stated that surgery "is an option" but "cannot actually be performed at three levels." (Tr. 418). However, "[h]e could eventually be a candidate for one or two-level disc replacement, or the alternative

lumbar fusion, which Dr. Wingo did not prefer to perform." (Tr. 419). Dr. Witkind stated that he would "defer to the opinions of an expert over a family practitioner in the complicated base of the spine." (Tr. 419).

## DISCUSSION

Mr. Austin contends that the ALJ erred in failing to give proper weight to the opinions of his treating physicians and in not finding him fully credible, and that he was disabled from his onset date as a matter of law. The Commissioner argues that the ALJ's findings were supported by substantial evidence and must, therefore, be sustained. The issue thus presented is whether the ALJ's decision that the Mr. Austin was not disabled, in light of his physical condition, age, education, work experience, and residual functional capacity, is supported by substantial evidence in the record.

### 1. Treating physicians.

Mr. Austin first contends that the ALJ erred in not giving appropriate weight to the opinions of Dr. Hatcher and Dr. Wingo. Absent good cause, the opinion of a claimant's treating physician must be accorded considerable or substantial weight by the Commissioner. *Phillips v. Barnhart*, 357 F.3d 1232, 1240-1241 (11th Cir. 2004); *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997); *Broughton v. Heckler*, 776 F.2d 960, 960-961 (11th Cir. 1985); *Jones v. Bowen*, 810 F.2d 1001, 1005 (11th Cir. 1986). "Good cause" exists when: (1) the treating physician's opinion was not bolstered by the evidence; (2) the evidence supported a contrary finding; or (3) the treating physician's opinion was conclusory or inconsistent with the doctor's own medical records. *Phillips,* 357 F.3d at 1241; see also *Lewis,* 125 F.3d at 1440 (citing cases).

If a treating physician's opinion on the nature and severity of a claimant's impairments is well-supported by medically acceptable clinical and laboratory diagnostic techniques, and is not inconsistent with other substantial evidence in the

record, the ALJ must give it controlling weight. 20 C.F.R. § 404.1527(d)(2). Where a treating physician has merely made conclusory statements, the ALJ may afford them such weight as is supported by clinical or laboratory findings and other consistent evidence of a claimant's impairments. See *Wheeler v. Heckler*, 784 F.2d 1073, 1075 (11th Cir. 1986); *see also Schnor v. Bowen,* 816 F.2d 578, 582 (11th Cir. 1987). When a treating physician's opinion does not warrant *controlling* weight, the ALJ must nevertheless weigh the medical opinion based on (1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship; (3) medical evidence supporting the opinion; (4) consistency with the record as a whole; (5) specialization in the medical impairments at issue; and (6) other factors which tend to support or contradict the opinion. 20 C.F.R. 404.1527(d).

The opinion of a non-examining physician is entitled to little weight, and, if contrary to the opinion of a treating physician, is not good cause for disregarding the opinion of the treating physician, whose opinion generally carries greater weight. *See* 20 C. F. R. § 404.1527(d)(1); *Broughton v. Heckler,* 776 F.2d 960, 962 (11th Cir. 1985); *Wilson v. Heckler,* 734 F.2d 513, 518 (11th Cir. 1984); *Hurley v. Barnhart,* 385 F.Supp.2d 1245, 1255 (M.D.Fla. 2005). However, a brief and conclusory statement that is not supported by medical findings, even if made by a treating physician, is not persuasive evidence of disability. *Johns v. Bowen,* 821 F.2d 551, 555 (11th Cir. 1987); *Warncke v. Harris,* 619 F.2d 412, 417 (5th Cir. 1980).

"When electing to disregard the opinion of a treating physician, the ALJ must clearly articulate its reasons." *Phillips,* 352 F.3d at 1241. Failure to do so is reversible error. *Lewis,* 125 F.3d at 1440 (citing *MacGregor v. Bowen,* 786 F.2d 1050, 1053 (11th Cir. 1986));[1] *see also Nyberg v. Commissioner of Social Security*, 179

---

[1]*MacGregor* further held that "Where the [Commissioner] has ignored or failed properly to refute a treating physician's testimony, we hold as a matter of law that he has accepted it as true." 786 F.2d at 1053.

Fed.Appx. 589, 591 (11th Cir. 2006) (Table, text in WESTLAW)(also citing *MacGregor*).

Here Mr. Austin contends that the ALJ erred in giving weight to Dr. Witkind's opinion because he was not an examining physician, and because he mis-read Dr. Wingo's records. A non-examining physician is considered a medical expert and can give expert testimony. 20 C. F. R. §§ 404.1527(d), 416.927(d). The two allegedly incorrect sentences of Dr. Witkind's testimony upon which Mr. Austin relies are not so direct. Dr. Witkind testified that he reviewed Dr. Wingo's records and noted that Dr. Wingo wanted to do a disc replacement and that Mr. Austin should not work until surgery. He stated that the surgery recommended by Dr. Wingo had not been FDA approved, and that a three level disc replacement was not approved (tr. 414). Mr. Austin conflates this into Dr. Witkind saying Dr. Wingo recommended a three level replacement. That is one way of reading it. Another way of reading it is Dr. Witkind saying that the disc replacement recommended by Dr. Wingo was not FDA approved, <u>and</u> neither was a three level replacement. It was the ALJ's function to resolve ambiguity, so Mr. Austin's argument fails.

Mr. Austin also argues that Dr. Wingo performed a disc replacement at two levels once it was approved. However, this proves little since that surgery was on Mr. Austin's neck, not his low back.

The ALJ gave little weight to the opinion of Dr. Wingo because it was not supported by his own notes and tests. The MRI's were benign until March 2005, and then Dr. Witkind characterized the result as inconsistent with Mr. Austin's complaints (tr. 415). The ALJ also noted that Dr. Hatcher[2] was a family practitioner and, as Dr. Witkind testified, his records showed essentially normal tests and did not support his opinion that Mr. Austin was effectively disabled, and that as a family practitioner his opinion was entitled to less weight. 20 C. F. R. §§ 404.1527(d)(5),

---

[2]In the original report and recommendation (doc. 40), the undersigned incorrectly identified Dr. Hatcher as Dr. Stringer. The district judge caught this error. Because the error was as to the name, not the specialty, the undersigned's analysis and recommendation is unchanged.

416.927(d)(5) (less weight may be given to the opinion of a physician regarding issues not within his specialty). Finally, the ALJ found that Dr. Witkind was a board certified neurosurgeon who had access to the entire medical record (unlike the treating physicians), and that his opinion was supported by the entire record. The ALJ's decision was supported by substantial record evidence, and Mr. Austin is not entitled to reversal on this ground.

>    2.    Credibility.

Mr. Austin also contends that the ALJ erred in his evaluation of his credibility. He argues that the medical records support his claims of disabling pain. As this court is well aware, pain is treated by the Regulations as a symptom of disability. Title 20 C.F.R. § 404.1529 provides in part that the Commissioner will not find disability based on symptoms, including pain alone, ". . . unless medical signs or findings show that there is a medical condition that could be reasonably expected to produce these symptoms." *Accord* 20 C.F.R. § 416.929. The Eleventh Circuit has articulated the three-part pain standard, sometimes referred to as the *Hand*[3] test, as follows:

> In order to establish a disability based on testimony of pain and other symptoms, the claimant must satisfy two parts of a three-part test showing: (1) evidence of an underlying medical condition; and (2) either (a) objective medical evidence confirming the severity of the alleged pain; or (b) that the objectively determined medical condition can reasonably be expected to give rise to the claimed pain.

*Wilson v. Barnhart*, 284 F.3d 1219, 1225 (11th Cir. 2002) (citing *Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir. 1991); *Ogranaja v. Commissioner of Social Security*, 186 Fed.Appx. 848, 2006 WL 1526062, *3+ (11th Cir. 2006) (quoting *Wilson*) (Table, text in WESTLAW); *Elam v. Railroad Retirement Bd.*, 921 F.2d 1210, 1216 (11th Cir. 1991).

---

[3] *Hand v. Bowen*, 793 F.2d 275, 276 (11th Cir.1986) (the case originally adopting the three-part pain standard).

The Eleventh Circuit has also approved an ALJ's reference to and application of the standard set out in 20 C.F.R. § 404.1529, because that regulation "contains the same language regarding the subjective pain testimony that this court interpreted when initially establishing its three-part standard." *Wilson, supra*, 284 F.3d at 1226. Thus, failure to cite to an Eleventh Circuit standard is not reversible error so long as the ALJ applies the appropriate regulation.

But "[w]hile both the Regulations and the *Hand* standard require objective medical evidence of a condition that could reasonably be expected to cause the pain alleged, neither requires objective proof of the pain itself." *Elam*, 921 F.2d at 1215. The Eleventh Circuit has held that "pain alone can be disabling, even when its existence is unsupported by objective evidence." *Foote v. Chater*, 67 F.3d 1553, 1561 (11th Cir. 1995)(citing *Marbury v. Sullivan*, 957 F.2d 837, 839 (11th Cir. 1992)); *Walker v. Bowen*, 826 F.2d 996, 1003 (11th Cir. 1987); *Hurley v. Barnhart*, 385 F.Supp.2d 1245, 1259 (M.D.Fla. 2005). However, the presence or absence of evidence to support symptoms of the severity claimed is a factor that can be considered. *Marbury*, 957 at 839-840; *Tieniber v. Heckler,* 720 F.2d 1251, 1253 (11th Cir. 1983).

Finally, if the Commissioner refuses to credit subjective testimony of the plaintiff concerning pain he must do so explicitly and give reasons for that decision. *MacGregor v. Bowen*, 786 F.2d at 1054. Where he fails to do so, the Eleventh Circuit has stated that it would hold as a matter of law that the testimony is accepted as true. *Holt v. Sullivan*, 921 F.2d at 1223; *MacGregor v. Bowen*, 786 F.2d at 1054. Although the Eleventh Circuit does not require an explicit finding as to a claimant's credibility, the implication must be obvious to the reviewing court. *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005). The credibility determination does not need to cite particular phrases or formulations but it cannot merely be a broad rejection which is not enough to enable the reviewing court to conclude that the ALJ considered the claimant's medical condition as a whole. *Dyer*, 395 F.3d at 1210 (11th

Cir. 2005) (internal quotations and citations omitted).  And of course, the reasons articulated for disregarding the plaintiff's subjective pain testimony must be based upon substantial evidence.  *Wilson*, 284 F.3d at 1225-1226; *Jones v. Department of Health and Human Services*, 941 F.2d 1529, 1532 (11ᵗʰ Cir. 1991); *Hurley*, 385 F.Supp.2d at 1259.

Underlying the *Hand* standard is the need for a credibility determination concerning a plaintiff's complaints of pain.  Those complaints are, after all, subjective.  "[T]he ascertainment of the existence of an actual disability depend[s] on determining the truth and reliability of [a claimant's] complaints of subjective pain."  *Scharlow v. Schweiker*, 655 F.2d 645, 649 (5ᵗʰ Cir. 1981) (holding that the ALJ must resolve "the crucial subsidiary fact of the truthfulness of subjective symptoms and complaints").[4]  People with objectively identical conditions can experience significantly different levels of pain, and pain is more readily treated in some than in others.  "Reasonable minds may differ as to whether objective medical impairments could reasonably be expected to produce [the claimed] pain.  This determination is a question of fact which, like all factual findings by the [Commissioner], is subject only to limited review in the courts . . . ."  *Hand, supra,* at 1548-49.  It is within the ALJ's "realm of judging" to determine whether "the quantum of pain [a claimant] allege[s] [is] credible when considered in the light of other evidence."  *Arnold v. Heckler*, 732 F.2d 881, 884  (11ᵗʰ Cir. 1984).  Thus, a physician may be told by a patient that he or she is in pain, and the physician may believe it, but the ALJ is not bound by that.  The evidence as a whole, including the existence of corroborating objective proof or the lack thereof, and not just a physician's belief or the plaintiff's claims, is the basis for the ALJ's credibility determination.

---

[4] **Decisions of the United States Court of Appeals for the Fifth Circuit decided prior to September 30, 1981 are binding precedent in the Eleventh Circuit.  *Bonner v. Pritchard*, 661 F.2d 1206, 1207 (11ᵗʰ Cir.1981) (en banc).**

As noted in the first section, the medical evidence was not so compelling as Mr. Austin suggests. Dr. Witkind, a neurosurgeon, noted particularly that almost all physical examinations were reported as essentially normal, and that where an abnormality was noted, it was contrary to what would be expected based on objective testing. It was well within the ALJ's realm of judging to find that Mr. Austin was less than fully credible in his claims of disabling pain. The ALJ's decision was supported by substantial record evidence, and Mr. Austin is not entitled to reversal on this ground.

Accordingly, it is respectfully RECOMMENDED that the Commissioner's decision be AFFIRMED, that judgment be entered in favor of the defendant, and that the clerk be directed to close the file.

At Pensacola, Florida this 6th day of January, 2010.

/s/ *Miles Davis*
      **MILES DAVIS**
      **UNITED STATES MAGISTRATE JUDGE**

### NOTICE TO PARTIES

Any objections to these proposed findings and recommendations must be filed within ten days after being served a copy hereof. <u>Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control.</u> A copy of any objections shall be served upon any other parties. Failure to object may limit the scope of appellate review of factual findings. See 28 U.S.C. § 636; *United States v. Roberts*, 858 F.2d 698, 701 (11th Cir. 1988).